1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  KATHY TORCHIA, | ) Case No.: 1:13-cv-01427-LJO-JLT |
| 12        Plaintiff, | )<br>) ORDER GRANTING PLAINTIFF'S MOTION |
| 13      v. | ) FOR PRELIMINARY APPROVAL OF CLASS<br>) SETTLEMENT |
| 14  W.W. GRAINGER, INC., | )<br>) (Docs. 24, 31) |
| 15        Defendant. | ) |
| 16 | ) |

17          Plaintiff Kathy Torchia requests preliminary approval of the class settlement with Defendant

18  W.W. Grainger, Inc.  (Doc. 24.)  By and through this motion, Plaintiff seeks: (1) conditional

19  certification of the settlement class; (2) preliminary approval of the settlement; (3) appointment of

20  Plaintiff as the class representative; (4) appointment of S. Brett Sutton and Jared Hague as Class

21  Counsel; (5) approval of the class notice and related materials; (6) appointment of Simplurius, Inc., as

22  the settlement administrator; and (7) scheduling for final approval of the settlement.  (Doc. 29 at 2-3.)

23  Defendant does not oppose the motion for preliminary approval of the class settlement.

24          The Court has considered the proposed settlement between the parties, and the proposed

25  Notice, Claim Form, and Elusion Form.  On August 13, 2014, the Court heard the oral arguments of

26  counsel.  For the following reasons, Plaintiff's motion for preliminary approval of class settlement is

27  **GRANTED**.

28  ///

1

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint in Kern County Superior Court on May 31, 2013. (Doc. 1 at 11.) She brought her claims "on behalf of herself and all other similarly situated current and former employees of [Defendant]." (*Id.* at 13.) Defendant filed a Notice of Removal on September 6, 2013, thereby initiating the matter before this Court. (Doc. 1.) Defendant asserted the Court has original jurisdiction over the action pursuant to the Class Action Fairness Act, because the parties are diverse and the matter in controversy exceeded $5 million. (*Id.* at 3-4.)

Plaintiff filed a First Amended Complaint on November 12, 2013. (Doc. 14.) Plaintiff asserts Defendant is liable for (1) failure to pay minimum wages in violation of Cal. Labor Code §§ 1197, 1194 and 1194.2; (2) failure to pay overtime in violation of Cal. Labor Code § 510; (3) failure to provide meal periods or additional wages in lieu thereof; (4) failure to provide rest periods or additional wages in lieu thereof; (5) failure to issue accurate wage statements in violation of Cal. Labor Code § 226; (6) failure to reimburse employees for business related expenses in violation of Cal. Labor Code § 2802; (7) failure to timely pay wages due upon termination in violation of Cal. Labor Code §§ 201, 202 and 203; (8) and violations of California's unfair competition laws, as set forth in Cal. Bus & Prof. Code § 17200, *et seq.* (*See id.* at 12-26.) Further, Plaintiff sought penalties pursuant to the Private Attorneys General Act ("PAGA") for the alleged Labor Code violations. (*Id.* at 26.) Defendant filed its answer on December 13, 2013. (Doc. 15.)

The Court issued its scheduling order governing the action on January 9, 2014. (Doc. 18.) The parties engaged in discovery, and Plaintiff "issued formal written discovery requests in or about February 2014." (Doc. 25 at 11.) In response to the requests for discovery, Defendant "produced extensive electronic data and hard copy documents equivalent to thousands of pages of documentary evidence." (*Id.*) In addition, Plaintiff took the deposition of Brian Williams, Defendant's Regional Vice President of Customer Service and Defendant's person most knowledgeable pursuant to Federal Rule of Civil Procedure 30(b)(6). (*Id.*)

The parties engaged in private mediation with Mark Rudy on May 15, 2014. (Doc. 25 at 11.) Although the matter was not resolved on that date, the parties continued to work with Mr. Rudy, and "ultimately gave their tentative agreement to the terms of a settlement on or about May 28, 2014." (*Id.*

2

at 12.)  Thereafter, Plaintiffs filed the motion for preliminary approval of class settlement on July 16, 2014 (Doc. 24), which is now pending before the Court.

## THE PROPOSED SETTLEMENT

Pursuant to the proposed settlement ("the Settlement"), the parties agree to a gross settlement amount not to exceed $2,750,000.  (Doc. 26 at 19, Settlement ¶¶ 22-23.)  Defendant agrees to fund the Settlement by providing funds to the Claims Administrator fourteen days after the Court holds a Final Approval and Fairness Hearing and issues a final order approving the terms of the Settlement.  (*Id.* at 19, 26, Settlement ¶¶ 19, 48.)

## I.     Payment Terms

The settlement fund will cover payments to class members with additional compensation to the Class Representative.  (Doc. 25 at 2; Doc. 26 at 19.)  In addition, the Settlement provides for payments to Class Counsel for attorneys' fees and expenses, to the Settlement Administrator, and the California Labor & Workforce Development Agency.  (Doc. 26 at 34, Settlement ¶ 61.)  Specifically, the settlement provides for the following payments from the gross settlement amount:

- The Class Representative will receive up to $20,000;
- Class counsel will receive no more than $916,575 for attorneys' fees, which equals 33.33% of the gross settlement amount, and $10,000 for expenses;
- The California Labor and Workforce Development Agency shall receive $7,500 from the total award of $10,000 under PAGA; and
- The Settlement Administrator will receive up to $22,000 for fees and expenses.

(Doc. 26 at 29-30, Settlement ¶¶ 53-56.)  After these payments have been made, the remaining money ("Net Settlement Amount") will be distributed as settlement shares to Class Members.  (Doc. 26 at 20, 34, Settlement ¶¶ 28, 61.)

To receive a settlement share from the Net Settlement Amount, a class member must submit a timely and valid claim form.  (Doc. 26 at 32, Settlement ¶ 59.)  Settlement shares will be calculated based upon the following formula:

The Settlement Administrator shall divide the Net Settlement Amount by the total number of pay periods Class Members were employed during the Class Period, in order to determine the amount to which each Class Member is entitled for each pay period he or she was employed by Grainger within the Class Period (the "Weekly Amount"). The Settlement Administrator will multiply the Weekly Amount by the total number of pay periods that each Class Member was employed by Grainger during the Class Period.

3

(Doc. 26 at 35, Settlement ¶ 62.)  Consequently, the exact amount each receives depends upon how many class members submit timely and valid claim forms.

## II.     Releases

The Settlement provides that Plaintiffs and Class Members, other than those who elect not to participate in the Settlement, at the time final judgment is entered, shall release Defendant from the claims arising in the class period.  Specifically, the release for class members provides:

> "Released Claims" shall mean any and all claims, demands, rights, debts, obligations, costs, expenses, wages, liquidated damages, statutory damages, penalties, liabilities, and/or causes of action of any nature and description whatsoever, whether known or unknown, at law or in equity, whether concealed or hidden, whether under federal, state, and/or local law, statute, ordinance, regulation, common law, or other source of law, which were asserted in the Action or could have been asserted against the Released Patties arising out of, derived from, or related to the facts and circumstances alleged in the Complaint.

(Doc. 26 at 21, Settlement ¶ 33; Doc. 25 at 13.)

The release for Plaintiff encompasses more claims than the release of Class Members, providing the release of any claims that could have arisen during the course of her employment with Defendant.  (Doc. 26 at 39, Settlement ¶ 75; Doc. 25 at 14.)  Specifically, Plaintiff's release provides:

> The Named Plaintiff, on behalf of herself and her heirs, executors, administrators, and representatives, shall and does hereby forever release, discharge and agree to hold harmless the Released Parties from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorney fees and costs), known or unknown, at law or in equity, which she may now have or may have after the signing of this Stipulation, against Defendant arising out of or in any way connected with her employment with Grainger including, the Released Claims, claims that were asserted or could have been asserted in the Complaint, and any and all transactions, occurrences, or matters between the parties occurring prior to the Preliminary Approval Date.

(*Id.*)  Thus, claims released by Plaintiff, but not Class Members, include any claims arising under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Employee Retirement Income Security Act.  (*Id.* at 40, ¶ 45.)

## III.    Objections and Opt-Out Procedure

Any class member who wishes may file objections or elect not to participate in the Settlement. The Notice of Proposed Settlement ("the Notice") explains the procedures to claim a share of the settlement, object to the settlement, or elect not to participate in the Settlement.  (Doc. 25 at 14; Doc. 26

4

at 52-58.)  The Notice explains the claims that are released as part of the Settlement.  (Doc. 26 at 51-52). With the Notice, each class member will receive the Claim Form, which will include number of pay periods each the class member was employed by Defendant and an estimate of the amount the class member will receive under the Settlement.  (*Id.* at 57; Doc. 26 at 32, Settlement ¶ 58.)

## PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

### I.   Legal Standard

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Preliminary approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists.  *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable."  *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or reject a settlement is within the Court's discretion.  *Hanlon*, 150 F.3d at 1026.

### II.   Conditional Certification of a Settlement Class

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all."  Fed. R. Civ. P. 23(a). Under the terms of the Settlement, the proposed class is comprised of "All current and former employees who were employed by W.W. Grainger, Inc. in California at any time from May 31, 2009 through the Preliminary Approval Date who have not settled all of the claims asserted herein."  (Doc. 29 at 3.)  Plaintiffs seek conditional approval of the class for settlement pursuant to Fed. R. Civ. P. 23(c)(1), under which the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date."  (Doc. 25at 15) (quoting *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000)).

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977).  If an action meets the prerequisites of Rule 23(a), the Court must consider

whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

**A.     Rule 23(a) Requirements**

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982).  Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation.  *Falcon*, 457 U.S. at 156.

**1.     Numerosity**

A class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  This requires the Court to consider "specific facts of each case and imposes no absolute limitations."  *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980).  Although there is not a specific numerical threshold, joining more than one hundred plaintiffs is impracticable.  *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in which courts certified classes with fewer than 100 members").  Here, after reviewing Defendants' "internal payroll records," the parties estimate that the class includes "approximately 2,000 employees."  (Doc. 26 at 23, Settlement ¶ 42.)  Therefore, the numerosity requirement is satisfied.

**2.     Commonality**

Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). Commonality "does not mean merely that [class members] have all suffered a violation of the same pro-vision of law," but "claims must depend upon a common contention." *Wal-Mart Stores*, 131 S. Ct. at 2551.  In this case, the parties fail to identify any common questions of fact and law.  However, the parties stipulate that the requirements of Rule 23 are satisfied.  Accordingly, the Court finds the

commonality requirement is satisfied for purposes of settlement.

### 3.   Typicality

This requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standards under this rule are permissive, and a claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted).

Review of the Complaint demonstrates Plaintiff allege that she was employed by Defendant for fifteen years, including during the relevant time period. (Doc. 14 at 10, ¶ 20.). The parties agree that Plaintiff and the Settlement Class Members "all received wage statements, the format of which was identical or substantively identical." (Doc. 25 at 17.) In addition, the parties agree that Plaintiff and the Settlement Class Members "were subject to the same written policies concerning reimbursement of required safety footwear and provision of meal and rest periods, and were paid under the same pay practices as every other class member." (*Id.*) Therefore, the typicality requirement is satisfied.

### 4.   Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). Accordingly, this prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

#### a.   *Proposed class representative*

Plaintiff seeks appointment as the Class Representative of the Settlement Class. (Doc. 25 at 17.) Plaintiff asserts that she has "acted in the best interests of the class, and . . . treated the interests of

7

1    current and former Grainger employees who are in the class" the same as she would her own claims.

2    (Doc. 28 at 3, Torchia Decl. ¶ 9.)  Further, Plaintiff asserts that she does not know of any conflicts

3    between herself and "any former or current Grainger employee."  (*Id.*, Torchia Decl. ¶ 10.)  Thus, it

4    appears Plaintiff will fairly and adequately represent the interests of the class.

5                            *b.*       *Proposed class counsel*

6         S. Brett Sutton and Jared Hague seek appointment as counsel for the settlement class. (Doc. 25

7    at 17.)  Counsel report that they "have significant experience litigating wage and hour class action

8    cases and in serving as class counsel."  (*Id.*, citing Sutton Decl. ¶ 5; Hague Decl. ¶ 5.)  Further, Mr.

9    Sutton and Mr. Hague report that "neither [they], nor any member of the firm, have any personal

10    affiliation or family relationship with the plaintiffs and proposed Class Representatives."  (*Id.*, quoting

11    Sutton Decl. ¶ 28; Hague Decl. ¶ 10.)  Defendant does not oppose their appointment or assert they are

12    inadequate to represent the interest of the class. Therefore, the Court finds Mr. Sutton and Mr. Hague

13    satisfy the adequacy requirements.

14       **B.**       **Certification of a Class under Rule 23(b)(3)**

15         As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified

16    if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266.

17    Plaintiff asserts that "[the]parties agree for purposes of the Settlement only that certification of the

18    Class is appropriate under Rule 23(b)(3) because 'questions of law or fact common to the members of

19    the class predominate over any questions affecting only individual members, and . . . a class action is

20    superior to other available methods for the fair adjudication of the controversy.'"  (Doc. 25 at 18)

21    (quoting Fed. R. Civ. P. 23(b)(3)).  Accordingly, the Court finds certification of the conditional

22    settlement class is proper under Rule 23(b)(3).

23    **III.**      **Evaluation of the Settlement Terms**

24         Settlement of a class action requires approval of the Court, which may be granted "only after a

25    hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

26    Approval is required to ensure settlement is consistent with Plaintiffs' fiduciary obligations to the

27    class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit has set

28    forth several factors to determine whether a settlement agreement meets these standards, including:

the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[1] and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted).  Further, a court should consider whether settlement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)).  In reviewing the settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute."  *Class Plaintiffs*, 955 F.2d at 1291(internal quotations and citation omitted).

### A.    Strength of Plaintiffs' Case

According to Plaintiff, "there are several disputed claims the fact-finder would be required to determine" if the action were to proceed, and she "would face significant risks impacting the likelihood of a successful outcome." (Doc. 25 at 19.)  Plaintiff asserts:

> One of the primary claims of this case involves the question of whether wage statements that GRAINGER provided to the Settlement Class resulted in violation of California Labor Code section 226(e). However, there are issues of fact concerning whether any violation of Section 226(a) would constitute a "…knowing and intentional failure" by GRAINGER so as to constitute a violation of Section 226(e), and further there is uncertainty as to whether the Settlement Class could nevertheless "…promptly and easily determine from the wage statement alone," those categories of information described in Section 226(e)(2)(B)(i)-(iv). The parties are unaware of any class action case in California that has been tried on the merits of whether wage statement of the type at issue here, and the issue was hotly contested by the parties in this Action. Thus, the law in this area is uncertain and there is a risk that GRAINGER could prevail on its asserted defenses.
> There is also uncertainty as to whether PLAINTIFF could prevail on her claim for reimbursement of business-related expenses with respect to GRAINGER's requirement that certain Settlement Class members pay for 50% of the cost of OSHA-approved footwear. Although OSHA regulations generally require that employers pay for personal protective equipment that is necessary to comply with OSHA standards, an exception exists for non-specialty safety-toe protective footwear. 29 C.F.R. § 1910.132(h)(2). However, the issue remains as to whether such footwear constitutes apparel "…of distinctive design or color" for purposes of California regulations concerning the employer's obligations to provide uniforms for employees. 8 C.C.R. § 11040(9)(A). Again, the parties are unaware of any case in California that has been tried on the merits of whether footwear of the kind required by GRAINGER's written policies must be provided by the employer at no cost to the employee.

---

[1] Because there is not a government participant in this action, this factor does not weigh in the Court's analysis.

9

1     (Doc. 25 at 19-20.)  Further, Plaintiff acknowledges that the ruling of the California Supreme Court in

2     *Brinker Restaurant Corp. v Superior Ct.*, 53 Cal.4th 1004 (Cal. 2012) "raises significant uncertainties"

3     as to her ability to succeed on her meal and rest break claims.  (*Id.* at 20.)  Given the uncertainties

4     identified by Plaintiff, this factor weighs in favor of preliminary approval of the Settlement.

5           **B.        Risk, Expense, Complexity, and Likely Duration of Further Litigation**

6           Approval of settlement is "preferable to lengthy and expensive litigation with uncertain

7     results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  If

8     the settlement were to be rejected, the parties would have to engage in further litigation, including

9     seeking class certification and discovery on the issue of damages.  Plaintiff contends that "[t]he time

10    and expense of continued litigation . . . could potentially outweigh any additional recovery obtained

11    through successful litigation."  (Doc. 25 at 20.)  On the other hand, the proposed settlement provides

12    for immediate recovery for the class.  Thus, this factor weighs in favor of approval of the Settlement.

13          **C.        Risk of Maintaining Class Status throughout the Trial**

14          Plaintiffs acknowledge, [T]here is substantial risk that a class may not be certified by the

15    Court."  (Doc. 25 at 20, citing *e.g., Brown v. Federal Express*, 249 F.R.D. 580, 585 (C.D. Cal.2008);

16    York v. Starbucks Corp., 2011 WL 4597489, at *3-4 (C.D. Cal. Aug. 5, 2011); *Villacres v. ABM Indus.*

17    *Inc.*, 384 Fed. App'x. 626 (9th Cir. 2010); *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142

18    (2011)).  Due to the risk to the claims of class members, this factor supports preliminary approval of the

19    Settlement.

20          **D.        Amount Offered in Settlement**

21          The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of

22    absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Commission*, 688

23    F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in

24    settlement, the Court should examine "the complete package taken as a whole," and the amount is "not

25    to be judged against a hypothetical or speculative measure of what *might* have been achieved by the

26    negotiators."  *Id.*, 688 F.2d at 625, 628.

27          Here, the proposed gross settlement amount is $2,750,000.  (Doc. 26 at 19, Settlement ¶¶ 22-

28    23.) Although, generally, orders approving class settlements compare the settlement amount to the

estimated total maximum liability, the parties did not calculate the total maximum liability following a review of the evidence.  (Doc. 25 at 21.)  Plaintiff reports that "review of a sample of daily time records of non-exempt members of the Settlement Class generally demonstrated that such members recorded that they took meal periods for the required 30-minute time period and commenced their meal periods no later than the commencement of their fifth hour of work."  (*Id.*)  Further, Plaintiff asserts the discovery demonstrated that Defendant "instructed its employees to record all of their hours worked, including overtime hours, which undercut [the] allegations of required off-the-clock work."  (*Id.*)  In light of the information obtained in discovery, "the parties acknowledge that the gross settlement amount is reflective of a compromise as to all of Plaintiff's allegations."  Accordingly, the Court finds the amount offered in settlement supports approval of the settlement agreement.

### E.  Extent of Discovery Completed and Stage of the Proceedings

Plaintiff reports that "[t]he parties have been actively involved in the discovery process since the outset of the case."  (Doc. 25 at 22.)  According to Plaintiff,

> The discovery procedure in this case entailed both informal and formal discovery exchange. Over the course of these exchanges, GRAINGER produced data reflective of thousands of pages of data concerning time records, dates of employment, job classifications, hourly wage rates and wage statements provided to the Settlement Class. PLAINTIFF took the deposition of the 30(b)(6) designee of GRAINGER for a full-day, and obtained additional documents in conjunction with that deposition[].

(Doc. 25 at 22.)  It appears that the parties made informed decisions, which lead to resolution of the matter with the assistance of a mediator.  Consequently, this factor supports preliminary approval of the Settlement.

### F.  Experience and Views of Counsel

As addressed above, Plaintiff's counsel are experienced in class action litigation.  Based upon discovery conducted in the matter, Mr. Sutton asserts that "the Settlement is fair and equitable for all concerned," and he believes the "Settlement is in the best interest of all involved."  (Doc. 26 at 7, Sutton Decl. ¶ 23.)  Likewise, Defendant "determined that it is desirable and beneficial to it that the Acton be settled in the manner and upon the terms and conditions set forth in [the Settlement]." (Doc. 26 at 25, Settlement ¶ 24.)  These recommendations of counsel are entitled to significant weight, and support approval of the settlement agreement.  *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great

1  weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts

2  of the underlying litigation").

3       **G.      Reaction of Class Members to the Proposed Settlement**

4       Plaintiff has agreed to the terms of Settlement Agreement.  (Doc. 26 at 46.)  However, because

5  Class Members have not yet received notice, this factor shall be revisited during and after the hearing

6  for final approval of the Settlement.

7       **H.      Collusion between Negotiating Parties**

8       The inquiry of collusion addresses the possibility that the settlement agreement is the result of

9  either "overt misconduct by the negotiators" or improper incentives of class members at the expense of

10  others.  *Staton*, 327 F.3d at 960.  Plaintiffs assert: "The Settlement was reached after informed, arm's

11  length negotiations between the parties.  Plaintiff conducted extensive investigation and discovery

12  allowing them to assess the strengths and weaknesses of the case."  (Doc. 25 at 22.)  The parties

13  utilized an impartial mediator, and settlement negotiations took approximately two weeks to complete.

14  (*See id.* at 11-12.)  Accordingly, it appears the agreement is the product of non-collusive conduct, and

15  this factor weighs in favor of preliminary approval of the settlement.

16       **I.      Attorneys' Fees**

17       Class counsel has requested attorneys' fees in the amount of "not to exceed thirty three and

18  one-third percent (33-1/3 %) . . . of the Gross Settlement Amount."  (Doc. 26 at 29, Settlement ¶¶ 53-

19  54).  The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total

20  settlement value, with 25% considered the benchmark.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th

21  Cir. 2000).

22       In general, the party seeking fees bears the burden of establishing that the fees and costs were

23  reasonably necessary to achieve the results obtained.  *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115,

24  1119 (9th 2000).  Therefore, a fee applicant **must provide time records documenting the tasks**

25  **completed and the amount of time spent on the action**.  *Hensley v. Eckerhart*, 461 U.S. 424, 424

26  (1983); *Welch v. Metropolitan Life Ins. Co*., 480 F.3d 942, 945-46 (9th Cir. 2007).  Because the

27  percentage of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is

28  approved preliminarily.  The Court will determine the exact amount of the fee award upon application

by Class Counsel for approval of fees.[2]

## J.    Class Representative Enhancement

The Settlement provides that "Plaintiff may petition the Court to approve an Incentive Award in an amount up to $20,000 for her efforts on behalf of the Class in the Action," to be paid from the Gross Settlement Amount.  (Doc. 26 at 27, Settlement ¶ 49.)  Incentive awards for class representatives are not to be given routinely by the Court.  In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'"  *Id.* (citation omitted).  In evaluating the enhancement award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation."  *Staton*, 327 F.3d at 977.

The Settlement explains that the enhancement is to be given to Plaintiff for "assisting in the investigation and consulting with Class Counsel."  (Doc. 26 at 27, Settlement ¶ 49.)  Plaintiff reports:

> In preparation of this action I met with Mr. S. Brett Sutton, Mr. Jared Hague and other staff of the Sutton Hatmaker Law Corporation and Sutton Hague Law Corporation on numerous occasions. We had lengthy phone conferences on the issues in this action. I also frequently called and spoke with Jared Hague about the status of this case and to offer information that I thought would be helpful in proving the claims that I made as part of this case. I consulted with Mr. Sutton and Mr. Hague in their preparations for attending a mediation of this case.

> I participated extensively in the discovery process. I worked with my attorneys to develop questions that they could ask of Grainger. I assisted with preparations for the deposition of a Grainger representative by discussing the details of my work at Grainger. I was truthful in the representations I made as part of the discovery process in this case.

---

[2] At this time, the Court approves only an amount not to exceed a third of the settlement amount.  However, counsel are reminded that, in light of what appears to be a short-lived case with little actual discovery and when the amount sought is weighed against the relatively modest settlement award and the potentially small recovery by the putative class members, they must provide detailed evidence in their motion for final approval to properly supporting their fee request.

1    In summary, I have been responsive to all of the requests for assistance that my
attorneys made to me, and have offered as much support as I could to move this case
2    forward.

3    (Doc. 28 at 2-3, Torchia Decl. ¶¶ 7-9.)  However, there is *no* evidence related to the actual number of

4    hours Plaintiff spent working with Class Counsel on this action, or even an estimate of the number of

5    meetings Plaintiff had with Class Counsel.  Further, Plaintiff has no fear of workplace retaliation,

6    because her employment with Defendant ended in April 2013.  (*Id.* at 2, ¶ 4.)  Nevertheless, given the

7    flexibility for an award *up to* $20,000 to the class representatives, approval of a class representative

8    enhancement is appropriate.[3]

9    **APPROVAL OF CLASS NOTICE**

10    The class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which

11    provides the notice "must clearly and concisely state in plain, easily understood language" the

12    following information:

13    (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims,
issues, or defenses; (iv) that a class member may enter an appearance through an
14    attorney if the member so desires; (v) that the court will exclude from the class any
member who requests exclusion; (vi) the time and manner for requesting exclusion; and
15    (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

16    

17    Fed. R. Civ. P. 23(c)(2)(B).  A class notice must be "reasonably calculated, under all circumstances, to

18    apprise interested parties of the pendency of the action and afford them an opportunity to present their

19    objections."  *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

20    ///

21    

22    [3] On its face, a class representative enhancement of $20,000 appears to be excessive.  *Wade v. Minatta Transp.*
*Co.*, 2012 U.S. Dist. LEXIS 12057 (N.D. Cal. Feb. 1, 2012) (finding the class representatives, who reported "they were
23    involved with the case by interacting with counsel, participating in conferences, reviewing documents, and attending the
day-long mediation that resulted in the settlement" failed to justify an incentive award of $10,000); *see also Alvarado v.*
24    *Nederend*, 2011 U.S. Dist. LEXIS 52793 (E.D. Cal. Jan. 11, 2011) (awarding $7,500 to class representatives); *In re Wells*
*Fargo Loan Processor Overtime Pay Litig.*, 2011 U.S. Dist. LEXIS 84541 (N.D. Cal. Aug. 2, 2011) (approving "incentive
25    awards of $7,500 per class representative as compensation for their involvement in the case for the past five years,
including appearing for depositions, assisting with written discovery, and working with Class Counsel to manage the
26    settlement process").  In contrast, here, Plaintiff did not attend the mediation, and the action was initiated less than 15
months prior to being settled.  Thus, as its stands and with the lack of specificity as to Plaintiff's actual participation in this
27    litigation, the Court would be hard-pressed to award the enhancement sought.  Thus, if Plaintiff will persist in seeking this
enhancement, she **SHALL** provide evidence to support her request for the incentive award and **SHALL** include the
28    number of hours expended, broken down by task, related to this action prior to the Final Approval and Fairness Hearing.

14

**I.      Content of the Notice**

Plaintiff has submitted the proposed Notice, Claim Form, and Exclusion Form (collectively "Notice Packet").  Upon review of the proposed Notice Packet, the Court finds the content is adequate. It provides information regarding the background of the action and claims asserted.  The Notice explains the terms and provisions of the Settlement, including the payments from the gross settlement fund.  (*See* Doc. 26 at 50-51.)  In addition, the Notice explains the rights and procedures to claim a share of the Settlement, object to the Settlement, or elect not to participate in the Settlement, and will include the applicable deadlines.  (*Id.* at 52-55.)  Finally, the Notice Packet will provide an estimate of the Class Member's share based upon the number of pay periods employed by Defendant, and explains the effect of the judgment and settlement.  (*Id.* at 51-52, 57-58.)

**II.      Method and Administration of Notice Packet**

No later than 14 days after entry of this Order, Defendant will give the Settlement Administrator and Class Counsel the data it possesses for each class member, including: "names, social security numbers, dates of employment, last-known addresses and phone numbers."  (Doc. 26 at 31, Settlement ¶ 48.) This information shall remain confidential.  (*Id.*)  Within 14 days of receiving this data, the Settlement Administrator will mail the Notice Packets to all Class Members.  (*Id.* at 32, ¶ 58.)  For any Notice Packet returned due to an incorrect address, the Settlement Administrator will search for a more current address and re-mail the Notice Packet.  (*Id.* at 32, ¶ 59.)

Class members must submit and postmark their Claim Form to the Settlement Administrator within 45 days of the date on which the Notice Packets are mailed. (Doc. 26 at 32, Settlement ¶ 59.) Similarly, Class Members who elect not to participate in the settlement will have 45 days to complete the Exclusion Form. (*Id.*)  If a Claim Form is completed improperly or is deficient in one or more respects, "the Settlement Administrator shall mail a deficiency letter to that Class Member identifying the problem and either returning the Claim Form for completion or, if deemed necessary by the Settlement Administrator, sending a new Claim Form no later than seven days after receipt of the deficient Claim Form."  (*Id.* at 33, ¶ 59.)

Class Members who wish to object to the Settlement must serve the parties and file with the Court "a statement of why the objector believes that the Court should find that the proposed Settlement

is not in the best interests of the Class and the reasons why the Settlement should not be approved, including the legal and factual arguments supporting the objection," within 45 days after mailing of the Notice Packet. (Doc. 26 at 33, Settlement ¶ 60.) In addition, the written statement must indicate whether the Class Member intends to appear at hearing. (*Id.* at 33-34.) Class Members will not be permitted to make objections at the Final Approval and Fairness Hearing "unless they have submitted a timely written objection and notice of intention to appear." (*Id.* at 34, Settlement ¶ 60.)

At least 14 days prior to the hearing for final approval of the Settlement, the Settlement Administrator will serve the parties and the Court with "a Declaration of Due Diligence and Proof of Mailing with regard to the mailing of the Class Notice and its attempts to locate Class Members." (Doc. 26 at 32-33, Settlement ¶ 59.) The declaration shall include "the number of Class Members to whom Class Notices were sent and the number of Class Members to whom Class Notices were delivered." (*Id.* at 33, ¶ 59.)

## III.   Required Revisions to the Notice Packet

The Notice Packet must be modified to include information in this Order, including the date of the hearing for Final Approval of Class Settlement, and deadlines for Claim Forms, Exclusion Forms, and any opposition to the Settlement. Likewise, the Claim Form must be modified to include the relevant information, including the address and phone numbers of the Settlement Administrator.

## APPOINTMENT OF SETTLEMENT ADMINISTRATOR

The parties have agreed upon and propose that the Court appoint Simpluris, Inc., ("Simpluris") to serve as the Settlement Administrator. (Doc. 26 at 22, Settlement ¶ 37.) Under the terms of the proposed Settlement:

> The Settlement Administrator will be responsible for mailing the Class Notice to Class Members, setting up a toll-free number for the purpose of handling inquiries from Class Members concerning the Class Notice and determination of Individual Settlement Amounts, mailing a reminder postcard to the Class Members, maintaining the settlement funds in an appropriate interest bearing account, preparing, administrating and distributing Individual Settlement Amounts to Class Claimants, issuing a final report and performing such duties as the Parties may direct.
>
> On a weekly basis, the Settlement Administrator will provide reports to Class Counsel and Defense Counsel updating them as to the number of validated and timely received Claim Forms and Opt-Out Requests. The Settlement Administrator will serve on Class Counsel and Defense Counsel via e-mail date-stamped copies of the original Opt-Out Requests no later than seven days after their receipt. The Settlement Administrator will provide Class Counsel with proof of mailing of the Class Notice, the Claim Form, and the Opt-Out Request Form…

16

1   (Doc. 26 at 30, ¶ 57.)   Simpluris anticipates the expenses related to its responsibilities will not exceed

2   $22,000.  (*Id.* at 31, ¶ 57.)  Based upon the recommendation and request of the parties, Simpluris is

3   appointed as the Settlement Administrator.

4                                    **CONCLUSION AND ORDER**

5              Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and

6   reasonable.  The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the

7   settlement agreement.  Moreover, preliminary approval of a settlement and notice to the proposed

8   class is appropriate "if [1] the proposed settlement appears to be the product of serious, informed,

9   noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential

10  treatment to class representatives or segments of the class, and [4] falls within the range of possible

11  approval."  *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting

12  *Manual for Complex Litigation*, Second § 30.44 (1985)).  Here, the proposed settlement agreement

13  satisfies this test.

14             Accordingly, **IT IS HEREBY ORDERED**:

15        1.      Plaintiff's request for conditional certification of the Settlement Class is **GRANTED**,

16                and the class is defined as follows:

17                          All current and former employees who were employed by W.W.
18                          Grainger, Inc. in California at any time from May 31, 2009
                            through the date of service of this Order who have not settled all
19                          of the claims asserted by Plaintiff.

20        2.      Preliminary approval of the parties' proposed settlement agreement, as modified by this

21                order, is **GRANTED**;

22        3.      The propose notice plan is **APPROVED**;

23        4.      Kathy Torchia is **APPOINTED** the Class Representative for the Settlement Class;

24        5.      S. Brett Sutton and Jared Hague are **APPOINTED** Class Counsel;

25        6.      Simpluris, Inc. is **APPOINTED** as the Settlement Administrator, with responsibilities

26                pursuant to the terms set forth in the Settlement Agreement;

27        7.      The Class Representative enhancement request for Plaintiff is **GRANTED**

28                preliminarily up to the amount of $20,000, subject to a petition and review at the Final

Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

8. Class Counsel's request for fees of not to exceed 33 1/3% of the gross settlement amount and costs up to $10,000 is **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

9. No later than **December 1, 2014**, Defendant SHALL deposit with the Claims Administrator a sufficient amount to cover the class attorney's fees and expenses, the incentive award, the administrative expenses, the PAGA award, the aggregate amount of the individual settlement amounts submitted by class claimants and taxes and required withholding associated with the individual settlement amounts, in an amount not to exceed $2,750,000;

10. The petition for attorneys' fees and for class representative enhancement fee **SHALL** be filed no later than **October 31, 2014**;

11. Costs of settlement administration shall not exceed $22,000;

12. The proposed Notice Packet is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice Packet with the required revisions for the Court's approval no later than **August 20, 2014**;

13. The parties **SHALL** provide the Settlement Administrator with the Class Data no later than within **September 9, 2014**;

14. The Settlement Administrator **SHALL** mail the approved Class Notice Packet no later than **September 30, 2014**;

15. Any Class Member who submits a timely and valid Claim Form on or before **November 17, 2014** SHALL receive a settlement share;

16. A class member who wishes to be excluded from settlement shall postmark the Opt-Out Form no later than **November 17, 2014**;

17. Any objections to or comments on the Settlement Agreement must be filed with the

18

Court and mailed to Class Counsel no later than **November 17, 2014**;

18. Plaintiff's oral request to file the motion for final approval of the class settlement is **GRANTED**. The motion **SHALL** be filed no later than **December 1, 2014**, and any opposition **SHALL** be filed no later than **December 12, 2014**;

19. A Final Approval and Fairness Hearing is SET for **December 19, 2014** at 1:30 p.m. at the United States Courthouse located at 510 19th Street, Bakersfield, California. At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members. The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees;

20. Class Members may appear at the hearing on **December 19, 2014** in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award. For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

21. The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court on or before **November 17, 2014**;

22. The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members; and

23. The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated:   **August 13, 2014**                   **/s/ Jennifer L. Thurston**
                                               UNITED STATES MAGISTRATE JUDGE