**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KATHY TORCHIA, | ) Case No.: 1:13-cv-01427 - LJO - JLT |
|         Plaintiff, | ) |
| | ) ORDER GRANTING IN PART PLAINTIFF'S |
|         v. | ) MOTION FOR ATTORNEY FEES AND CLASS |
| | ) REPRESENTATIVE ENHANCEMENT (Doc. 38) |
| W.W. GRAINGER, INC., | ) |
| | ) ORDER GRANTING THE PARTIES' JOINT |
|         Defendant. | ) MOTION FOR FINAL APPROVAL OF CLASS |
| | ) SETTLEMENT (Doc. 42) |
| | ) |

Plaintiff Kathy Torchia and Defendant W.W. Grainger, Inc. seek certification of the Settlement Class and final approval of the settlement terms.  (Doc. 42.)  In addition, Plaintiff seeks an award of attorney's fees from the Settlement fund; costs in the amount of $10,000; and a class representative enhancement. (Doc. 38.)  Defendant does not oppose these requests, and no objections were filed by class members.

For the following reasons, final approval of the Settlement is **GRANTED.**  In addition, Plaintiff's request for attorney fees is **GRANTED** in the modified amount of 20% of the gross settlement, and her request for an incentive payment is **GRANTED** in the modified amount of $7,500.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint in Kern County Superior Court on May 31, 2013.  (Doc. 1 at 11.)  She brought her claims "on behalf of herself and all other similarly situated current and former employees of [Defendant]."  (*Id.* at 13.)  Defendant filed a Notice of Removal on

1

September 6, 2013, thereby initiating the matter before this Court.  (Doc. 1.)  Defendant asserted the Court has original jurisdiction over the action pursuant to the Class Action Fairness Act, because the parties are diverse and the matter in controversy exceeded $5 million.  (*Id.* at 3-4.)

Plaintiff filed a First Amended Complaint on November 12, 2013.  (Doc. 14.)  Plaintiff asserts Defendant is liable for (1) failure to pay minimum wages in violation of Cal. Labor Code §§ 1197, 1194 and 1194.2; (2) failure to pay overtime in violation of Cal. Labor Code § 510; (3) failure to provide meal periods or additional wages in lieu thereof; (4) failure to provide rest periods or additional wages in lieu thereof; (5) failure to issue accurate wage statements in violation of Cal. Labor Code § 226; (6) failure to reimburse employees for business related expenses in violation of Cal. Labor Code § 2802; (7) failure to timely pay wages due to upon termination in violation of Cal. Labor Code §§ 201, 202 and 203; (8) and violations of California's unfair competition laws, as set forth in Cal. Bus & Prof. Code § 17200, *et seq*.  (*See id.* at 12-26.)  Further, Plaintiff sought penalties pursuant to the Private Attorneys General Act ("PAGA") for the alleged Labor Code violations.  (*Id.* at 26.)  Defendant filed its Answer on December 13, 2013.  (Doc. 15.)

The Court issued its Scheduling Order governing the action on January 9, 2014.  (Doc. 18.)  The parties engaged in discovery, and Plaintiff "issued formal written discovery requests in or about February 2014." (Doc. 25 at 11.)  In response to the requests for discovery, Defendant "produced extensive electronic data and hard copy documents equivalent to thousands of pages of documentary evidence." (*Id.*)   In addition, Plaintiff took the deposition of Brian Williams, Defendant's Regional Vice President of Customer Service and Defendant's person most knowledgeable pursuant to Federal Rule of Civil Procedure 30(b)(6).  (*Id.*)

The parties engaged in private mediation with Mark Rudy on May 15, 2014.  (Doc. 25 at 11.)  Although the matter was not resolved on that date, the parties continued to work with Mr. Rudy, and "ultimately gave their tentative agreement to the terms of a settlement on or about May 28, 2014." (*Id.* at 12.)  Plaintiff filed an unopposed motion for preliminary approval of the class settlement and conditional certification of the Settlement Class on July 16, 2104.  (Docs. 24-25.)

The Court granted preliminary approval of the class settlement on August 13, 2014.  (Doc. 33.)  The Court appointed Plaintiff as the Class Representative, and authorized Plaintiff to seek an award

enhancement up to $20,000 for her representation of the class.  (*Id.* at 17.)  In addition, the Court appointed S. Brett Sutton and Jared Hague as the Class Counsel, and authorized Class Counsel to seek fees that did not "exceed 33 1/3% of the gross settlement amount and costs up to $10,000."  (*Id.* at 18-19.)  On August 28, 2014, the Court approved the Class Notice that conveyed this information to Class Members.  (Doc. 35.)  In addition, the Class Notice Packet informed the Class Members of the nature of the action, the class definition approved by the Court, the claims and issues to be resolved, how a class member may enter appear through an attorney or chose to be excluded from the class, the time and method to opt-out of the class, and the binding effect of a class judgment.  (*See id.*)

The Settlement Administrator mailed the Class Notice Packet to 2,047 Class Members.  (Doc. 45 at 3, Behring Decl. ¶ 6.)  Of the mailed Notices, 18 were undeliverable because the Settlement Administrator was unable to locate a current address.  (*Id.*, ¶ 10.)  Class Members were instructed to submit Claim Forms on or before November 17, 2014 to receive a settlement share.  (Doc. 33 at 18.)  A total of 909 Class Members submitted the requisite Claim Form. (Doc. 45 at 4, Behring Decl. ¶ 14.)  In addition, the Settlement Administrator received 94 Exclusion Forms, eight of which were deemed invalid because "the Class Members also . . . timely filed Claim Forms."  (*Id.*, ¶ 16.)  No objections were received by the Settlement Administrator or filed with the Court.

The parties filed the joint motion for final approval of the Settlement on December 1, 2014.  (Doc. 42.)  The parties have consented to the jurisdiction of the assigned magistrate judge pursuant to 28 U.S.C. § 636(c)(1) for the limited purposes "of approval and administration of the settlement agreement recently entered into by the parties."  (Docs. 21, 22.)

## SETTLEMENT TERMS

Pursuant to the settlement agreement ("the Settlement"), the parties agree to a gross settlement amount not to exceed $2,750,000.  (Doc. 26 at 19, Settlement ¶¶ 22-23.)  Defendant agrees to fund the Settlement by providing funds to the Claims Administrator fourteen days after the Court issues a final order approving the terms of the Settlement.  (*Id.* at 19, 26, Settlement ¶¶ 19, 48.)

## I.  Payment Terms

The settlement fund will cover payments to class members with additional compensation to the Class Representative.  (Doc. 25 at 2; Doc. 26 at 19.)  In addition, the Settlement provides for payments

to Class Counsel for attorneys' fees and expenses, to the Settlement Administrator, and the California Labor & Workforce Development Agency.  (Doc. 26 at 34, Settlement ¶ 61.)  Specifically, the Settlement provides for the following payments from the gross settlement amount:

- The Class Representative will receive up to $20,000;

- Class counsel will receive no more than $916,575 for attorneys' fees, which equals 33.33% of the gross settlement amount, and $10,000 for expenses;

- The California Labor and Workforce Development Agency shall receive $7,500 from the total award of $10,000 under PAGA; and

- The Settlement Administrator will receive up to $22,000 for fees and expenses.

(Doc. 26 at 29-30, Settlement ¶¶ 53-56.)  After these payments have been made, the remaining money ("Net Settlement Amount") will be distributed as settlement shares to Class Members.  (Doc. 26 at 20, 34, Settlement ¶¶ 28, 61.)

To receive a settlement share from the Net Settlement Amount, a class member was required to submit a timely and valid claim form.  (Doc. 26 at 32, Settlement ¶ 59.)  Settlement shares were be calculated based upon the following formula:

> The Settlement Administrator shall divide the Net Settlement Amount by the total number of pay periods Class Members were employed during the Class Period, in order to determine the amount to which each Class Member is entitled for each pay period he or she was employed by Grainger within the Class Period (the "Weekly Amount"). The Settlement Administrator will multiply the Weekly Amount by the total number of pay periods that each Class Member was employed by Grainger during the Class Period.

(Doc. 26 at 35, Settlement ¶ 62.)  Consequently, the exact amount each receives depends upon how many class members submit timely and valid claim forms.

## II.      Releases

The Settlement provides that Plaintiffs and Class Members, other than those who elect not to participate in the Settlement, at the time final judgment is entered, shall release Defendant from the claims arising in the class period.  Specifically, the release for class members provides:

> "Released Claims" shall mean any and all claims, demands, rights, debts, obligations, costs, expenses, wages, liquidated damages, statutory damages, penalties, liabilities, and/or causes of action of any nature and description whatsoever, whether known or unknown, at law or in equity, whether concealed or hidden, whether under federal, state, and/or local law, statute, ordinance, regulation, common law, or other source of law, which were asserted in the Action or could have been asserted against the Released Patties arising out of, derived from, or related to the facts and circumstances alleged in the Complaint.

4

(Doc. 26 at 21, Settlement ¶ 33; Doc. 25 at 13.)

The release for Plaintiff encompasses more claims than the release of Class Members, providing the release of any claims that could have arisen during the course of her employment with Defendant.  (Doc. 26 at 39, Settlement ¶ 75; Doc. 25 at 14.)  Specifically, Plaintiff's release provides:

> The Named Plaintiff, on behalf of herself and her heirs, executors, administrators, and representatives, shall and does hereby forever release, discharge and agree to hold harmless the Released Parties from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorney fees and costs), known or unknown, at law or in equity, which she may now have or may have after the signing of this Stipulation, against Defendant arising out of or in any way connected with her employment with Grainger including, the Released Claims, claims that were asserted or could have been asserted in the Complaint, and any and all transactions, occurrences, or matters between the parties occurring prior to the Preliminary Approval Date.

(*Id.*)  Thus, claims released by Plaintiff, but not Class Members, include any claims arising under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Employee Retirement Income Security Act.  (*Id.* at 40, ¶ 45.)

### III.    Objections and Opt-Out Procedure

Any class member who wished had an opportunity to object or elect not to participate in the Settlement.  The Class Notice Packet explained the procedures for Class Members to claim object to the settlement, or elect not to participate in the settlement.  (*See* Doc. 34, Exh. 1; Doc. 35).  In addition, the Class Notice Packet explained claims that were to be released by Class Members as part of the settlement.  (*Id.*)

### IV.    Service of the Notice Packets and Responses Received

On August 13, 2014, the Court ordered the Settlement Administrator, Simpluris, Inc., to mail the Class Notice Packet to Class Members no later than September 30, 2014.  (Doc. 33 at 17-18.)  Simpluris served the Class Notice Packet to the extent possible.  (*See generally*, Doc. 45.)  The Class Notice Packets were mailed via the United States Postal Service to 2,047 the Class Members identified by Defendant.  (Behring Decl. ¶¶ 6-8.)

According to Danielle Behring, case manager for Simpluris, four Class Notice Packets were returned to Simpluris with forwarding addresses, which Simpluris re-mailed.  (Doc. 45 at 3, Behring Decl. ¶ 9.)  In addition, the United States Postal Service returned several packets as undeliverable.  (*Id.*,

¶ 10.)  Simpluris attempted to locate the current addresses for these individuals, and re-mailed 39 of the Notice Packets.  (*Id*.)  After the additional searches for correct addresses, only 18 Class Notice Packets remained undeliverable.  (*Id*.)  On October 21, 2014, a postcard reminder was mailed to the 1,899 Class Members who had not submitted a Claim Form or an Exclusion Form.  (*Id*. at 4, ¶ 12.)  Simpluris received 94 Exclusion Forms, of which eight "were determined invalid due to the Class Members also having timely filed Claim Forms."  (*Id*. at 5, ¶ 16.)

Ms. Behring reports Simpluris received Claim Forms from 909 Class members.  (Doc. 45 at 4, Behring Decl. ¶ 14.)  She asserts: "[T]he highest Settlement Share to be paid is approximately $2,305.15 and the average Settlement Share to be paid is approximately $1,397.62, which includes the 65% minimum payout allocation and the LWDA amount allocated to the Class Claimants. The valid claims account for approximately 65% of the Net Settlement Amount or $1,305,200.00."  (*Id*. at 4-5, emphasis omitted.)  No objections to the Settlement were mailed to Simpluris or filed with the Court.

## APPROVAL OF A CLASS SETTLEMENT

### I.      Legal Standard

When parties reach a settlement agreement prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable."  *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or reject a settlement is within the Court's discretion.  *Hanlon*, 150 F.3d at 1026.

### II.     Certification of a Class for Settlement[1]

Class certification is governed by the Federal Rules of Civil Procedure, which provide that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all."  Fed. R. Civ. P. 23(a).  Under the terms of the Settlement, the proposed class is comprised of "All current and

---

[1] Because the class was only conditionally certified upon preliminary approval of the Settlement, final certification of the Settlement Class is required.

6

former employees who were employed by W.W. Grainger, Inc. in California at any time from May 31, 2009 through the Preliminary Approval Date who have not settled all of the claims asserted herein." (Doc. 29 at 3.)

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). Here, Plaintiff argues "all requirements of Rule 23 are satisfied with respect to the proposed Settlement Class." (Doc. 43 at 16).

## A.    Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982) (citing *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980)). Rule 23(a) requires:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

### 1.    Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *EEOC*, 446 U.S. at 330. Although there is no specific numerical threshold, joining more than one hundred plaintiffs is impracticable. *See Jordan v. county of Los Angeles*, 669 F.2d 1311, 1319 & n.10 (9th Cir. 1982) (finding the numerosity requirement was "satisfied solely on the basis of the number of ascertained class members" and listing thirteen cases in which courts certified classes with fewer than 100 members), *vacated on other grounds*, 469 U.S. 810 (1982). Here, the Settlement Class includes more than 2,000 individuals. (Doc. 43 at 17, citing Behring Decl. ¶ 6.) Therefore, the

1  numerosity requirement is satisfied.

2          2.      Commonality

3          Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

4  Commonality "does not mean merely that [class members] have all suffered a violation of the same

5  pro-vision of law," but "claims must depend upon a common contention." *Dukes*, 131 S. Ct. at 2551.

6  In this case, the parties fail to identify any common questions of fact and law.  However, the parties

7  stipulate that the requirements of Rule 23 are satisfied.  Accordingly, the Court finds the commonality

8  requirement is satisfied for purposes of settlement.

9          3.      Typicality

10         The typicality requirement demands that the "claims or defenses of the representative parties

11  are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  A claim or defense is not

12  required to be identical, but rather "reasonably co-extensive" with those of the absent class members.

13  *Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar

14  injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether

15  other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts*

16  *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also*

17  *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (typicality is satisfied when named

18  plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

19         Review of the Complaint demonstrates Plaintiff alleged that she was employed by Defendant

20  for fifteen years, including during the relevant time period.  (Doc. 14 at 10, ¶ 20.)  In addition, Plaintiff

21  alleged that "she worked under the same wage and hour policies as other Class Members."  (*See* Doc.

22  43 at 17.)  As a result, Plaintiff "suffered injuries similar to those of the rest of the class," and has the

23  same interest in redressing the injuries.  (*Id.*)  Accordingly, the typicality requirement is satisfied.

24         4.      Fair and Adequate Representation

25         Absentee class members must be adequately represented for judgment to have a binding effect.

26  *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).  Accordingly, representative parties must "fairly and

27  adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "[R]esolution of this issue

28  requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any

conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

<em>a.     Class counsel</em>

As the Court noted previously, S. Brett Sutton and Jared Hague reported they "have significant experience litigating wage and hour class action cases and in serving as class counsel," and "neither [they], nor any member of the firm, have any personal affiliation or family relationship with the plaintiffs and proposed Class Representatives."  (Doc. 33 at 8, quoting Sutton Decl. ¶¶ 5, 28 and Hague Decl. ¶¶ 5, 10.)  In addition, Defendant does not question the adequacy of counsel.  Therefore, the Court finds Mr. Sutton and Mr. Hague satisfy the adequacy requirements.

<em>b.     Class representatives</em>

Plaintiff seeks appointment as the class representative of the Settlement Class, and asserts she "does not have a conflict of interest with any of the other Class Members."  (Doc. 43 at 18.)  According to Plaintiff, she has "acted to vigorously prosecute this action on behalf of Class Members," and "has done everything within her power to achieve a favorable resolution of this matter on behalf of Class Members."  (*Id.*)  Thus, it appears Plaintiff will fairly and adequately represent the interests of the class.

**B.     Certification of a Class under Rule 23(b)**

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266.  Plaintiff asserts that for Settlement purposes, class certification is appropriate under Rule 23(b)(3), which requires a finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  These requirements are generally called the "predominance" and "superiority" requirements.  *See Hanlon*, 150 F.3d at 1022-23; *see also Wal-mart Stores*, 131 S. Ct. at 2559 ("(b)(3) requires the judge to make findings about predominance and superiority before allowing the class").

1.     Predominance

The predominance inquiry focuses on "the relationship between the common and individual

9

issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods.*, 521 U.S. at 623). The Ninth Circuit explained, "[A] central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)). In this case, the parties agree that common issues predominate over any individual issues because the "compensation and reimbursement policies" implemented by Defendant "uniformly applied to the Class Members." (Doc. 43 at 19.)

### 2. Superiority

The superiority inquiry requires a determination of "whether objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023 (citation omitted). This tests whether "class litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Pursuant to Rule 23(b)(3), the Court must consider four non-exclusive factors to determine whether a class is a superior method of adjudication, including (1) the class members' interest in individual litigation, (2) other pending litigation, (3) the desirability of concentrating the litigation in one forum, and (4) difficulties with the management of the class action.

#### a. *Class members' interest in individual litigation*

This factor relevant when class members have suffered sizeable damages or have an emotional stake in the litigation. *See In re N. Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 856 (9th Cir. 1982)). Here, the average monetary damages each class member will receive is approximately $1,400. (Doc. 43 at 15, citing Behring Decl. ¶ 15.) Further, Plaintiff asserts that "there is no evidence that the Class Members have an interest in pursuing or controlling their individual cases." (*Id.* at 19.) Although the Settlement Administrator received 86 valid Exclusion Forms, which represents the desire of 4.2% of the Settlement Class to be excluded from the litigation, there is no evidence that these class members are interested in pursuing their own actions. Therefore, this factor weighs in favor of class certification.

#### b. *Other pending litigation*

According to Plaintiff, this is the only action she is aware of against Grainger involving the

claims brought by Plaintiff.  (Doc. 43 at 19.)  Further, Defendant has not identified any other pending litigation.  As a result, this factor weighs in favor of certification.

<em>c.    Desirability of concentrating litigation in one forum</em>

Because common issues predominate on Plaintiff's class claims, "presentation of the evidence in one consolidated action will reduce unnecessarily duplicative litigation and promote judicial economy."  *Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *37 (C.D. Cal. Oct. 25, 2011).  Moreover, because the parties have resolved the claims through the Settlement, this factor does not weigh against class certification.

<em>d.    Difficulties in managing a class action</em>

The Supreme Court explained that, in general, this factor "encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).  However, because the parties have reached a settlement agreement, it does not appear there are any problems with managing the action.  Therefore, this factor weighs in favor of class certification.

Because the factors set forth in Rule 23(b) weigh in favor of certification, the Settlement Class is maintainable under Rule 23(b)(3).  Accordingly, Plaintiff's request to certify the Settlement Class is **GRANTED.**

**III.    Approval of the Settlement**

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Approval is required to ensure the settlement is consistent with Plaintiffs' fiduciary obligations to the class.  *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985).  The Ninth Circuit identified several of factors to evaluate whether a settlement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[2] and the reaction of the class members to the proposed settlement.

---

[2] This factor does not weigh in the Court's analysis because the government is not a party in this action.  However, the Settlement provides a payment of $7,500 to the California Labor and Workforce Development Agency because the PAGA claim authorizes Plaintiff to act as a "private attorney general" on behalf of the State.

1    *Staton*, 327 F.3d at 959 (citation omitted).  Further, a court should consider whether settlement is "the

2    product of collusion among the negotiating parties."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at

3    458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)).  In reviewing settlement

4    terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law

5    which underlie the merits of the dispute."  *Class Plaintiffs*, 955 F.2d at 1291(internal quotations and

6    citation omitted).

7    **A.    Strength of Plaintiffs' Case**

8         In this action, the fact-finder would be required to determine several disputed claims.  Plaintiff

9    acknowledges that she "would face significant risks impacting the likelihood of a successful outcome.

10   (Doc. 43 at 21.)  For example, Plaintiff asserts there is uncertainty regarding whether she "could prevail

11   on her claim for reimbursement of business-related expenses with respect to [Defendant's] requirement

12   that certain Settlement Class members pay for 50% of the cost of OSHA-approved footwear."  (*Id.*)

13   She reports that "the parties are unaware of any case in California that has been tried on the merits of

14   whether footwear of the kind required by [Defendant's] written policies must be provided by the

15   employer at no cost to the employee."  (*Id.* at 22.)  Further, Plaintiff admits that evidence produced by

16   Defendant shows its employees "generally received all meal periods to which they were entitled in a

17   timely manner" and "were properly compensated for all hours worked."  (*Id.*) As a result, there are

18   uncertainties surrounding the merits of Plaintiff's claims and her ability to prove her claims at trial.

19   Given the uncertainties, this factor weighs in favor of approval of the Settlement.

20   **B.    Risk, Expense, Complexity, and Likely Duration of Further Litigation**

21        Approval of settlement is "preferable to lengthy and expensive litigation with uncertain

22   results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  If

23   the settlement were to be rejected, the parties would have to engage in further litigation, including re-

24   certification of a class and discovery on the issue of damages.  Plaintiff asserts, "The time and expense

25   of continued litigation could potentially outweigh any additional recovery obtained through successful

26   litigation."  (Doc. 43 at 22.)  On the other hand, the settlement provides for the immediate recovery for

27   the class, averaging approximately than $1,400 per claimant.  (*Id.* at 15, 23.)  Therefore, this factor

28   weighs in favor of approval.

### C.      Maintenance of Class Status throughout the Trial

Plaintiff acknowledges that even if she would be able to establish wage and hour violations by Defendant "there was a risk that the Court may not have certified some or all of [her] claims for class treatment."   (Doc. 43 at 23.)  According to Plaintiff, the California Supreme Court's decision in *Brinker Restaurant Corp. v. Superior Court*, "could pose obstacles to certification of a significant part of Plaintiff's claims.  *Id.*; *see also Brinker*, 53 Cal. 4th 1004, 1040-41 (2012) (holding the employer is required to provide a meal period to employees, but "is not obligated to police meal breaks and ensure no work thereafter is performed"); *Brown v. Federal Express*, 239 F.R.D. 580, 585 (C.D. Cal. 2008) (denying class certification of employees alleging the employers denied them meal breaks and rest breaks, and failed to give additional pay to employees who missed meal breaks).  Thus, this factor supports approval of the Settlement.

### D.      Amount offered in Settlement

The Ninth Circuit observed that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Id.* at 625, 628.

In this case, the proposed gross settlement amount totals $2,750,000.  (Doc. 26 at 19, Settlement ¶¶ 22-23.) Of this, "Class Members will share in a Net Settlement Amount preliminary estimated at $1,305,200.  (Doc. 43 at 23.)  Plaintiff's counsel believe that the Settlement total "represents a very favorable result in a wage and hour case involving hourly workers who are typically at the lower end of the earning spectrum."  (*Id.* at 23-24.)  Based upon the parties' agreement that this amount provides adequate compensation for class members, the Court finds the amount offered supports approval of the class settlement.

### E.      Extent of Discovery Completed and Stage of the Proceedings

The parties have been litigating this action actively since its initiation in May 2013.  (Doc. 43 at 24.)  Plaintiff reports that "[t]he parties have been actively involved in the discovery process since

the outset of the case." (*Id.*)  According to Plaintiff,

> The discovery procedure in this case entailed both informal and formal discovery exchange. Over the course of these exchanges, GRAINGER produced data reflective of thousands of pages of data concerning time records, dates of employment, job classifications, hourly wage rates and wage statements provided to the Settlement Class. PLAINTIFF took the deposition of the 30(b)(6) designee of GRAINGER for a full-day, and obtained additional documents in conjunction with that deposition[].

(Doc. 25 at 22.)  It appears that the parties made informed decisions, which lead to resolution of the matter with the assistance of a mediator.  Consequently, this factor supports preliminary approval of the Settlement.

### F.    Experience and Views of Counsel

As addressed above, Plaintiff's counsel are experienced in class action litigation.  The Class Counsel "believe[] the instant settlement is in the best interests of the Class Members." (Doc. 43 at 24.) Further, Defendant "determined that it is desirable and beneficial to it that the Acton be settled in the manner and upon the terms and conditions set forth in [the Settlement]." (Doc. 26 at 25, Settlement ¶ 24.)  These recommendations of counsel are entitled to significant weight and support approval of the settlement agreement.  *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

### G.    Reaction of Class Members to Settlement

Significantly, no objections were filed by Class Members following service of the Class Notice Packet.  In addition, Plaintiff agreed to the terms of the Settlement, and did not have any objections to the terms.  (*See* Doc. 26 at 46.)  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."  *Nat'l Rural Telecomms.*, 221 F.R.D. at 529.  Therefore, this factor weighs in favor of the Settlement.

### H.    Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others.  *Staton*, 327 F.3d at 960. The parties utilized an impartial mediator, and settlement negotiations

took several weeks to complete.  (*See* Doc. 35 at 11-12; Doc. 43 at 25.)  Given the duration of the negotiations, it appears the agreement is the product of non-collusive conduct.

**IV.     Conclusion**

The factors set forth by the Ninth Circuit weigh in favor of final approval of the Settlement, which appears to be is fair, reasonable, and adequate as required by Rule 23.  Therefore, final approval of the Settlement Agreement is **GRANTED**.

**REQUEST FOR ATTORNEYS' FEES AND COSTS**

Attorneys' fees and nontaxable costs "authorized by law or by agreement of the parties" may be awarded pursuant to Rule 23(h).  The Settlement authorizes Class Counsel to seek attorneys' fees that do "not to exceed thirty three and one-third percent (33-1/3 %) . . . of the Gross Settlement Amount." (Doc. 26 at 29, Settlement ¶¶ 53-54).  Here, Class Counsel seek an award of 25% of the settlement fund in the amount of $686,500, and $10,000 in costs.  (Doc. 38 at 6.)  Defendant agreed not to oppose Plaintiff's fee request. (*See* Doc. 38 at 6).

Under the "common fund" doctrine, attorneys who create a common fund for a class may be awarded their fees and costs from the fund.  *Hanlon*, 150 F.3d at 1029; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole").  An award from the common fund "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense," and as such application of the doctrine is appropriate "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf."  *Boeing Co.*, 444 U.S. at 478.  Here, the Settlement applies distribution formulas to determine the amount paid to class members who submitted a valid claim, and application of the common fund doctrine is appropriate.

**I.     Legal Standards**

"[A] district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement" to determine whether it is "'fundamentally fair, adequate, and reasonable' Fed.R.Civ.P. 23(e)."  *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003))  To do so, the Court must

"carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.*

A court "may not uncritically accept a fee request," but must review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. *See Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002); *see also McGrath v. County of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting a court may not adopt representations regarding the reasonableness of time expended without independently reviewing the record); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) (remanding an action for a thorough inquiry on the fee request where "the district court engaged in the 'regrettable practice' of adopting the findings drafted by the prevailing party wholesale" and explaining a court should not "accept[] uncritically [the] representations concerning the time expended").

The party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant must provide time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). "Where the documentation of hours in inadequate, the district court may reduce hours accordingly." *Hensley*, 461 U.S. at 433.

Significantly, when fees are to be paid from a common fund, as here, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). The Ninth Circuit observed:

> [A]t the fee-setting stage, plaintiff's counsel, otherwise a fiduciary for the class, has become a claimant against the fund created for the benefit of the class. It is obligatory, therefore, for the trial judge to act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is.

*Id.* at 1302 (internal quotation marks, citation omitted). As a result the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) ("when fees are to come out of the settlement fund, the district court has a fiduciary role for the class").

The Ninth Circuit determined both a lodestar and percentage of the common fund calculation

"have [a] place in determining what would be reasonable compensation for creating a common fund." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  Whether the Court applies the lodestar or percentage method, the Ninth Circuit requires "fee awards in common fund cases be reasonable under the circumstances."  *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also Staton*, 327 F.3d at 964 (fees must be "fundamentally fair, adequate, and reasonable").

### A.    Lodestar Method

The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate."  *Florida* , 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433).  The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  Next, the court may adjust the lodestar upward or downward using a "multiplier" considering the following factors adopted by the Ninth Circuit in a determination of the reasonable fees:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  However, the Court has since determined that the fixed or continent nature of a fee and the "desirability" of a case are no longer relevant factors.  *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1095, n.5 (9th Cir. 2011) (citing *Davis v. City of San Francisco*, 976 F.2d 1536, 1546 n.4 (9th Cir. 1992)).

### B.    Percentage from the common fund

As the name suggests, under this method, "the court makes a fee award on the basis of some percentage of the common fund."  *Florida*, 915 F.2d at 545 n. 3.  In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 30% of the total settlement value, with 25% considered the benchmark.  *See, Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002)*; *Hanlon*, 150 F.3d at 1029 (observing "[t]his circuit has established 25 % of the common fund as a benchmark

award for attorney fees").  The percentage may be adjusted below or above the benchmark, but the Court's reasons for adjustment must be clear.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

When assessing whether the percentage requested is reasonable, courts may consider a number of factors, including "(1) the results obtained for the class; (2) the risk undertaken by counsel; (3) the complexity of the legal and factual issues; (4) the length of the professional relationship with the client; (5) the market rate; and (6) awards in similar cases."  *Romero v. Produces Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270, at *8-9 (E.D. Cal. Nov. 14, 2007) (citing *Vizcaino*, 290 F.3d at 1048-1050; *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

## II.      Evaluation of the fees requested

Class Counsel requests the Court determine the reasonableness of the fee award by using the percentage of the common fund rather than the lodestar method.  "The district court has discretion to use the lodestar method or the percentage of the fund method in common fund cases." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (quoting *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997)).  Notably, the Court must consider similar factors under either method.  *See Kerr*, 526 F.2d at 70; *Vizcaino*, 290 F.3d at 1048-1050.  Further, the Court may "appl[y] the lodestar method as a crosscheck" to determine whether the percentage requested is reasonable.  *Vizcaino*, 290 F.3d at 1050, n.5.

### A.      Time and labor required

Class Counsel provided a list of each attorney who worked on this action, the number of hours, and the rate billed by each through the date of filing their motion for an award of fees.  (*See* Sutton Decl. ¶ 7, Doc. 39 at 3-4.)  The time records provided by Class Counsel indicate the attorneys and their assistants spent 457.85 hours on tasks related to this action, with attorney time totaling 449.85 hours. (*See* Doc. 38 at 16-17; Doc. 39 at 51.)  Further, Class Counsel reported that they "anticipate[d] another 30 hours of work in interaction with class members, reviewing reports of the Settlement Administrator, and working on the . . . Motion for Final Approval of Joint Stipulation of Class Settlement."  (Doc. 38 at 17.)  Accordingly, the time expended in this action totals 487.85 hours.

Mr. Sutton reports that during the pendency of this action, he "turned down dozens of potential

cases due to, among other reasons, the fact that it was unclear how this case was going to be resolved and the amount of time and expense that might be involved to prosecute this case." (Doc. 39 at 5, Sutton Decl. ¶ 14.)  However, from time the action commenced to the filing of this motion, Mr. Sutton expended only 103.90 hours in this action—with approximately 46% of these hours occurring in May 2014 alone.  (*See* Doc. 39 at 44-46.)  Mr. Hague worked 300.90 hours on this action through the filing of the motion for attorney fees.  Given the total number of hours, there is no evidence that Mr. Sutton and Mr. Hague were precluded from other work because of the pendency of this litigation.

### B.    Results obtained for the class

Courts have recognized consistently that the result achieved is a major factor to be considered in making a fee award.  *Hensley*, 461 U.S. at 436; *Wilcox v. City of Reno*, 42 F.3d 550, 554 (9th Cir. 1994).  Here, Plaintiff reports that "[t]he average Class Member will receive approximately $1,397, and the highest settlement share to be paid is approximately $2,305." (Doc. 43 at 10, citing Behring Decl. ¶ 15.)  Further, as part of the Settlement, Defendant "will henceforth provide the Class Members with any required safety shoes, free of charge." (Doc. 38 at 11.)  Defendant reports it cost "approximately $67,000" to change from covering 50% of the cost of safety shoes to providing the shoes free of charge. (Doc. 46 at 3, Williams Decl. ¶ 5.)

Significantly, as noted by the Court in its preliminary approval, Plaintiff did not provide an estimate of the total liability compared to the settlement amount such that the Court may find the results were "exceptional."  *See Vizcaino*, 290 F.3d at 1048 (observing "[e]xceptional results are a relevant circumstance" to an adjustment from the benchmark).

### C.    Risk undertaken by counsel

The risk of costly litigation and trial is an important factor in determining the fee award. *Chemical Bank v. City of Seattle*, 19 F.3d 1297, 1299-1301 (9th Cir. 1994).  The Supreme Court explained, "the risk of loss in a particular case is a product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits."  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).  Here, as discussed above, Plaintiff asserts there was "a substantial risk of loss based on the legal and factual merits of the claims." (Doc. 38 at 12.)  Further, Class Counsel contend the fee request is appropriate because they "litigated this case on a contingency basis, which

necessarily presented considerable risk, which weighs in favor of an award that exceeds the benchmark."  (Doc. 38 at 12, citing *Schiller v. David's Bridal, Inc.*, 2012 WL 2117001 (E.D. Cal. 2012); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396- 98 (S.D.N.Y. 1999).  However, the Ninth Circuit held that the distinction between a contingency arrangement and a fixed fee arrangement alone *does not* merit an enhancement from the benchmark.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 n.7. (9th Cir. 2011) ("whether the fee was fixed or contingent" is "no longer valid" as a factor in evaluating reasonable fees) (citation omitted).

Although Class Counsel confronted unsettled legal issues, the case was not complex.  Further, Class Counsel did not face extreme risks in pursuing this litigation.  For example, in *Vizcaino*, the plaintiffs "lost in the district court—once on the merits, once on the class definition" and the class counsel twice "succeeded in reviving their case on appeal."  *Id.*, 290 F.3d at 1303.  The court found the pursuit of the case was "extremely risky" given the absence of supporting precedents" and the challenges faced in the appeals.  *Id.*  As such, the risks supported an award of fees slightly above the benchmark.  *Id.* at 1048-49.  In contrast, here, though Defendant denied liability, settlement was achieved quite early in the litigation, and Class Counsel were not faced with a challenge to merits of the claims or the propriety of class certification.

### D.    Complexity of issues and skill required

The complexity of issues and skills required may weigh in favor of a departure from the benchmark fee award.  *See, e.g., Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *14-15 (E.D. Cal. Sept. 2, 2011) (in determining whether to award the requested fees totaling 28% of the class fund, the Court observed the case involved "complex issues of constitutional law in an area where considerable deference is given to jail officials," and the action "encompassed two categories of class members"); *see also In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555, at *66 (C.D. Cal. June 10, 2005) ("Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award").

Class Counsel contend this action required "substantial complexity and skill," because the case "involved the complex issue of interpreting California law as it applies to wage statements of Class Members, particularly in light of the injury requirement in California Labor Code section 226(e), the

recent amendment to that code section, and the discretion given to the courts as to whether to assess

civil penalties for such violations." (Doc. 38 at 14.) In addition, Class Counsel report they analyzed

"voluminous time records of hundreds of Class Members in order to develop an accurate framework for

potential settlement." (*Id.*)

Notably, the amendment to which Class Counsel refers clarified prior version of the statute, to

state that "the injury requirement is minimal" for a plaintiff. *See Fields v. W. Marine Products Inc.*,

2014 WL 547502 at *8 (N.D. Cal. Feb. 7, 2014). Following the amendment in 2013, "[a]n employee is

*deemed to suffer injury* … if the employer fails to provide accurate and complete information … and if

the employee cannot promptly and easily determine from the wage statement alone … the amount of

gross wages or net wages." Cal. Labor Code § 226(e)(2) (emphasis added). Further, the review of

paystubs and all data provided by Defendant took less than 50 hours to complete, discuss with potential

experts, and use to calculate potential class damages. (*See generally* Doc. 39 at 17-20, 22, 37-38, 44-

45.) Accordingly, though it may have been risky to take on this litigation in light of the lack of legal

authority to support some of Plaintiff's claims, the issues presented in this litigation do not appear to be

very complex.

### E.    Length of professional relationship

Class Counsel report that Plaintiff worked with them "for approximately two years," following

a referral in "early 2013." (Doc. 38 at 14.) Based upon the records provided by Class Counsel, it

appears the professional relationship was formally initiated on April 23, 2013.[3] (*See* Doc. 39 at 7, 37.)

The parties reached a settlement agreement on July 7, 2014. (Doc. 38 at 10.) Class Counsel recognize

that the duration of the professional relationship has been short, but assert "PLAINTIFF should not be

penalized for diligently prosecuting the case from the outset in a manner that convinced [Defendant] to

discuss early settlement and ultimately agree to settle [her] claims for a significant sum of money."

(*Id.*) However, the short duration of the professional relationship warrant an award below the

benchmark. *See Six Mexican Workers*, 904 F.2d at 1311 (finding "the 25 percent standard award" was

---

[3] Class Counsel do not identify a specific date for the beginning of the professional relationship, only reporting
that Plaintiff was referred to them "on or about early 2013." (Doc. 38 at 14, n.3.) The first records of any contact on the
time records are from April 23, 2013, when Class Counsel talked to Plaintiff regarding her case and a fee arrangement.
(*See* Doc. 39 at 7.)

appropriate although "the litigation lasted more than 13 years").

**F.   Awards in similar cases**

Class Counsel report that "[t]he percentage award requested in this case (25%) is lower than that which has been frequently awarded under other percentage-of-the benefit awards in wage-and-hour class actions in this District."  (Doc. 38 at 18.)  Specifically, Class Counsel identifies the following awards:

1)   33.3% in *Benitez et al. v. Wilbur*, 1:08-CV-1122 LJO GSA (E.D. Cal. 2009);

2)   33.3% in *Chavez et al. v. Petrissans et al.*, 1:08-CV00122 LJO-GSA (E.D. Cal. 2009);

3)   32.1% in *Schiller v. David's Bridal, Inc.*, 1:10-cv-00616-AWI-SKO (E.D. Cal. June 11, 2012);

4)   30% in *Vasquez v. Aartman*, 1:02-CV05624 AWI-LJO (E.D. Cal. 2008);

5)   31.25% in *Baganha v. California Milk Trans.*, 1:01-CV-05729 AWI- LJO (E.D. Cal. 2009);

6)   33% in *Randall Willis et al. v. Cal Western Transport*, and *Earl Baron et al. v. Cal Western Transport*, Coordinated Case No. 1:00-cv-05695 AWI- LJO (E.D. Cal.).

(Doc. 38 at 18.)  However, Class Counsel do not explain how these cases are similar to this matter beyond the fact that the plaintiffs presented wage and hour claims on behalf of a class.

Previously, in *Vasquez v. Coast Valley Roofing, Inc.*, the Court acknowledged the requested fee of 33.3% of the common fund was "in line with fee awards" made in the *Benitez, Chavez, Baganha*, and *Randall Willis* cases and which were cited by Class Counsel.  *Vasquez*, 266 F.R.D. 482, 492 (E.D. Cal. 2010.)  In *Vasquez*, the plaintiffs asserted the defendant was liable for wage and hour violations including failure to pay overtime and minimum wages, failure to provide all meal periods and rest breaks, failure to provide proper wage statements, and failure to compensate employees for travel time and mileage—similar to the claims presented by Plaintiff in this action.  *Id.* at 484.  The action settled for $300,000, and class members expected to receive an average award of $2,600.  *Id.* at 491-92.  The Court found the requested fees were appropriate despite being above the benchmark, noting the lodestar was $178,476 for the 465 hours of work completed.  *Id.* at 491, n.1.  As such, "the settlement only provide[d] for recovery of slightly more than half of the total lodestar."  *Id.*

Similarly, in *Schiller*, the Court awarded 32.1% of the common fund for class counsel's work

22

1   totaling 596.2 hours, but noted that "the requested fee [was] *far smaller* than the lodestar calculation

2   even when the hourly rates requested by counsel are reduced to account for attorney hourly rates

3   charged in the local community." *Schiller*, 2012 WL 2117001 at *6 (emphasis added). The Court

4   found the difference between the lodestar and the requested fees "confirm[ed] the reasonableness of

5   the percentage-fee requested by Class Counsel." *Id.* at *23. In contrast, as discussed below, here the

6   requested fee of is far *greater* than Class Counsel's lodestar calculation of $216,029.

7   **G.      Lodestar Crosscheck and Market Rate**

8         In general, the first step in determining the lodestar is to determine whether the number of hours

9   expended was reasonable. *Fischer*, 214 F.3d at 1119. However, when the lodestar is used as a cross-

10  check for a fee award, the Court is not required to perform an "exhaustive cataloguing and review of

11  counsel's hours." *See Schiller*, 2012 WL 2117001 at *20 (citing *In re Rite Aid Corp. Sec. Litig.*, 396

12  F.3d 294, 306 (3d Cir.2005); *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166 (S.D.Cal. 2007)).

13  Assuming the hours reported are reasonable[4], the Class Counsel reports the resulting lodestar totals

14  $216,029. (*See* Doc. 38 at 17.) Thus, the fees requested are 3.18 times the lodestar calculated by Class

15  Counsel. (*Id.*)

16        Significantly, however, the hourly fees used to calculate this amount must be reduced to reflect

17  the market rate within this community. The Supreme Court explained that attorney fees are to be

18  calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S.

19  886, 895-96 and n.11 (1984). In general, the "relevant community" for purposes of determining the

20  prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*,

21  523 F.3d 973, 979 (9th Cir. 2008). Thus, when a case is filed in the Fresno Division of the Eastern

22

23        [4] Class Counsel report 13.9 hours related to a motion for leave to amend a complaint (*See* Doc. 39 at 13, 36, and
    41.) However, no such motion was filed with the Court, and fees related to this motion would not normally be
24  compensable. Further, Class Counsel report 0.8 hours related to completing, reviewing, and filing the form indicating
    Plaintiff's consent to the jurisdiction of the Magistrate Judge. (*See id.* at 24, 34.) However, this appears excessive in light
25  of the fact that the consent form is a single page, check-the-box form and could not possibly take 48 minutes to discuss,
    prepare, and review. *See Calderon v. Astrue*, 2010 WL 4295583 at *5 (E.D. Cal. Oct. 22, 2010) (observing the consent
26  form is a "simple, check-the-box type form[] that require[s] little time and effort to complete and file," and awarding only
    0.1 hour for its completion). In light of these entries, as well as several entries that appear to include duplicative tasks (such
27  as revisions by Mr. Hague to the Joint Scheduling Statement "to incorporate S. Brett Sutton revisions" that Sutton indicates
    he incorporated himself), the number of hours seems excessive. Nevertheless, the Court uses the hours reported by Plaintiff
28  for its calculations because a "lodestar cross-check calculation need entail neither mathematical precision nor bean-
    counting." *See In re Rite Aid Sec. Litig.*, 396 F.3d at 306.

                                                          23

1   District of California, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to

2   establish the lodestar hourly rate . . ." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D.

3   Cal. 2011).

4          The hourly rates sought by attorneys on this action range from $240 to $580 per hour.  (*See*

5   Doc. 38 at 16-17.)  These rates are based upon the Laffey Matrix, which this Court acknowledged is a

6   "widely recognized compilation of attorney and paralegal rates used in the District of Columbia, and

7   frequently used in determining fee awards." (Doc. 38 at 16, quoting *Schiller*, 2012 WL 2117001 at

8   *21.)  Class Counsel report they used the Laffey Matrix "with a 25% downward adjustment" to account

9   for the change in location from the District of Columbia to the Eastern District of California.  (*Id.* at

10  16.)  Nevertheless, the hourly wages sought by Class Counsel exceed those generally awarded in the

11  Fresno Division of the Eastern District of California.

12         This Court has rejected rates based upon the Laffey Matrix, finding that "the hourly rate[]

13  generally accepted in the Fresno Division for competent experienced attorneys is between $250 and

14  $380, with the highest rates generally reserved for those attorneys who are regarded as competent and

15  reputable and who possess in excess of 20 years of experience." *Silvester v. Harris*, 2014 U.S. Dist.

16  LEXIS 174366, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 17, 2014) (citing *Willis v. City of* Fresno,

17  2014 U.S. Dist. LEXIS 97564 (E.D. Cal. July 17, 2014); *Gordillo v. Ford Motor Co*., 2014 U.S. Dist.

18  LEXIS 84359 (E.D. Cal. June 19, 2014)).  Likewise, this Court has found that the Laffey Matrix is

19  "'irrelevant to determining reasonable hourly rates for' counsel in the Eastern District of California).

20  The Laffey Matrix also fails to account for differences in hourly rates depending on the area of

21  practice." *Johnson v. Wayside Property, Inc*., 2014 WL 6634325 at * 7 (Nov. 21, 2014 E.D.Cal).

22         Further, this Court has determined that the acceptable rates "for an attorney with less than ten

23  years of experience" ranged "between $175 to $300," noting that attorneys with four and five years of

24  experience were recently awarded $200 per hour.  *Silvester*, 2014 WL 7239371 at *4, n.2.  Finally, "the

25  current reasonable hourly rate for paralegal work in the Fresno Division ranges from $75 to $150,

26  depending on experience."  *Id.* at *13. Thus, the hourly rates sought by Mr. Sutton ($580) and Mr.

27  Hague ($425) exceed those generally awarded in the Fresno Division of the Eastern District of

28

1   California.[5]

2        Mr. Sutton reports that he has "over twenty-five years of experience as a practicing attorney,

3   most of which has focused on issues of employment and labor law."  (Doc. 39 at 2, Sutton Decl. ¶ 2.)

4   Given Mr. Sutton's experience, a reasonable hourly rate is $380.  *See e.g., Silvester*, 2014 WL 7239371

5   (awarding $380 per hour to an attorney with "about 20 years of experience"); *Miller v. Schmitz*, 2014

6   WL 642729 at *3 (E.D. Cal. Feb. 18, 2014) (the "prevailing hourly rate in this district is in the

7   $400/hour range for experienced attorneys," and awarding $350 per hour for an attorney with 20 years

8   of experience).  Similarly, the hourly rate for Mr. Hague, who began practicing law in 2007, is reduced

9   from $425 per hour to $300.  *See Silvester*, WL 7239371 at *4-5.

10       With these rate adjustments to prevailing market rates—and assuming a blended rate of

11  $350/hour for the 30 hours anticipated on this motion—the lodestar amount is reduced by $62,172.50[6]

12  to a total of **$153,856.50**.

13  **III.    Amount of Fees to be Awarded**

14       Significantly, there is a strong presumption that the lodestar is a reasonable fee.  *Gonzalez*, 729

15  F.3d at 1202; *Camacho*, 523 F.3d at 978.  As a result, "a multiplier may be used to adjust the lodestar

16  amount upward or downward only in rare and exceptional cases, supported by both specific evidence

17  on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably

18  high."  *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000 (internal

19  punctuation and citations omitted).  Nevertheless, the Ninth Circuit observed that the lodestar is

20  "routinely enhanced . . . to reflect the risk of non-payment in common fund cases."  *In re Washington*

21  *Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1300. Class Counsel argues that the Court should apply a

22  multiplier "in line with the multipliers applied in other cases."  (Doc. 38 at 17) (citing *McKenzie v.*

23  *Federal Exp. Corp.*, 2012 WL 2930201 at *10 (C.D. Cal. July 2, 2012) (approving percentage-based

24  fee award that represented multiplier of 3.2)).

25       Here, the requested fees of $675,000.00 would result in a multiplier of approximately 4.39,

26

27  _____
         [5] Notably, by seeking a fee award of $686,500 for the completed 457.86 hours and anticipated 30 hours in
    preparing the motions now before the Court, Class Counsel seek an award of more than $1,400 per hour.
28       [6] The total award for hours worked by Mr. Sutton was reduced by $20,780.00; the award for hours worked by Mr.
    Hague was reduced by $37,612.50; and the reduced "blended rate" results in a deduction of $3,780.00.

which exceeds the range typically awarded in the Ninth Circuit. *See Vizcaino*, 290 F.3d at 1051 ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied").  Class Counsel faced only moderate risks, did not file or oppose any motions before the Court in the course of litigation until seeking approval of the Settlement, did not face complicated factual issues, and were not precluded from other work while prosecuting this action on Plaintiff's behalf. In light of these facts, a reduction to 20% of the common fund is appropriate.  *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value"); *see also Six Mexican Workers*, 904 F.2d at 1311 (awarding "the 25 percent standard award" where "the litigation lasted more than 13 years, obtained substantial success, and involved complicated legal and factual issues").  Accordingly Class Counsel's request for attorney fees is **GRANTED** in the modified amount of 20% of the Settlement fund, or $550,000.[7]

## REQUESTS FOR COSTS

### I.        Litigation Expenses

Reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54.  Attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  Here, Plaintiff's counsel seeks a total reimbursement of $10,000 for costs incurred in the course of this action.  (Doc. 38 at 19.)  According to Plaintiff's counsel, the actual costs incurred exceeded the amount requested, including:

| | |
|---|---|
| Filing and Motion Fees | $563.50 |
| Postage and Delivery Fees | $43.95 |
| Transcript and Deposition | $1,817.20 |
| Mediation Expenses | $5,000.00 |
| Legal Research | $416.90 |
| Mediation, Deposition and Hearing Travel Expenses | $2,657.32 |
| Photocopies | $20.12 |

(Doc. 39 at 5, Sutton Decl. ¶ 13.)  Previously, this Court noted cost "including filing fees, mediator fees . . . , ground transportation, copy charges, computer research, and database expert fees . . . are routinely

---

[7] Notably, even this reduced figure equates to more than $1,200 per hour expended.

1    reimbursed in these types of cases." *Alvarado v. Nederend*, 2011 WL 1883188 at *10 (E.D. Cal. Jan.

2    May 17, 2011).  Accordingly, the request for litigation costs in the amount of $10,000 is **GRANTED**.

3    **II.      Costs of Settlement Administration**

4           The Settlement authorizes the reimbursement of expenses up to $22,000 for the Settlement

5    Administrator.  (Doc. 26 at 30, Settlement ¶ 55.)  Ms. Behring reports, "Simpluris' total costs for

6    services in connection with the administration of this Settlement, including fees incurred and

7    anticipated future costs for completion of the administration, are $23,500."  (Doc. 45 at 5, Behring

8    Decl. ¶ 18.)  According to Ms. Behring, Simpluris' responsibilities "will continue with the calculation

9    of the settlement checks, issuance and mailing of those settlement checks, etc., and to do the necessary

10   tax reporting on such payments."  (*Id.*)

11          The administrative expenses requested are within the range of previous costs for claims

12   administration awarded in this District. *See, e.g, Bond v. Ferguson Enterprises, Inc.*, 2011 WL

13   2648879, at *8 ($18,000 settlement administration fee awarded in wage an hour case involving

14   approximately 550 class members); *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 483-84 (E.D.

15   Cal. 2010) ($25,000 settlement administration fee awarded in wage and hour case involving

16   approximately 170 potential class members).  Accordingly, the request for $22,000 in administration

17   expenses for the settlement administration by Simpluris is **GRANTED**.

18                  **PLAINTIFF'S REQUEST FOR AN INCENTIVE AWARD**

19          The Settlement provides that "Plaintiff may petition the Court to approve an Incentive Award

20   in an amount up to $20,000 for her efforts on behalf of the Class in the Action," to be paid from the

21   Gross Settlement Amount.  (Doc. 26 at 27, Settlement ¶ 49.)  Here, Plaintiff requests an incentive

     award of $15,000.  (Doc. 38 at 20.)

22          In the Ninth Circuit, a court has discretion to award a class representative a reasonable incentive

23   payment.  *Staton*, 327 F.3d at 977; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463.  Incentive

24   payments for class representatives are not to be given routinely.  In *Staton*, the Ninth Circuit observed,

25          Indeed, '[i]f class representatives expect routinely to receive special awards in addition
             to their share of the recovery, they may be tempted to accept suboptimal settlements at
26           the expense of the class members whose interests they are appointed to guard."
             *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also*
27           *Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D.
             173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a
28           separate peace with defendants, grave problems of collusion are raised.").

                                              27

*Id.* at 975.  In evaluating a request for an enhanced award to a class representative, the Court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Id.* at 977.  Further, incentive awards may recognize a plaintiff's "willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

### A.  Actions taken to benefit the class

Pursuant to the terms of the Settlement, the incentive award is to be given to Plaintiff "for assisting in the investigation and consulting with Class Counsel."  (Doc. 26 at 27, Settlement ¶ 49.) Plaintiff reports she assisted in the preparation of the complaint in the action; assisted with the discovery process by finding, producing, and explaining "documents and recordkeeping materials;" identifying "potential witnesses and other potential class members;" and conferring with the attorneys throughout the mediation process.  (Doc. 41 at 2-3.)  Although Plaintiff did not attend the mediation, she reports that she "assisted . . . with review of the mediation brief and in discussing what settlement terms would be most beneficial to the class."  (*Id.* at 3.)   Notably, Plaintiff would have assisted in much of these same actions to the same extent regardless of whether the action was brought on behalf of the class.  Nevertheless, undoubtedly, her actions benefitted the class such that they weigh in favor of an incentive payment.

### B.  Time expended by Plaintiff

Plaintiff reports that she spent 64 hours on tasks including discussions with counsel and class members, document preparation and review, and mediation.  (See Doc. 41 at 2-4, Torchia Decl. ¶ 6.) Specifically, Plaintiffs report the following tasks and time:

| TASK | TIME SPENT |
|---|---|
| Preparation of the complaint | 15 hours |
| Assisting with written discovery | 20 hours |
| Assisting with the PMK deposition notice | 8 hours |
| Review of documents produced | 5 hours |
| Preparations for and participating in mediation | 12 hours |
| Status updates with counsel | 4 hours |

(*Id.*)  Further, Plaintiff reports that she assisted "with preparation of the First Amended Complaint and .

. . reviewed its contents;" and  "assisted with the preparation of the motion for approval of the settlement and the drafting of [her] declaration in support of the motion," but does not report the time expended on these tasks.  (*See id.*)

Significantly, the time reported by Plaintiff appears exaggerated, particularly related to the preparation of the complaint and mediation.  Plaintiff reports that she "Discussed the contents of the Complaint on various occasions with Jared Hague and Brett Sutton, and . . . the obligations that [she] would be taking on as a class representative."  (Doc. 41 at 2, Torchia Decl. ¶ 6(a).)  Although Class Counsel contacted Plaintiff "to review Complaint and discuss case stats and procedures," the conversation lasted only 1.5 hours.  (*See* Doc. 39 at 9.)  Further, the emails sent by counsel to Plaintiff related to preparing the Complaint took less than 0.5 hours to draft.  (*See id.*)

In addition, Plaintiff reports she spent 12 hours preparing for and participating in the mediation of this action.  (Doc. 41 at 3, ¶ 6(f).)  Plaintiff asserts she assisted "with review of the mediation brief and in discussing what settlement terms would be the most beneficial for the class."  (*Id.*)  According to Plaintiff, though she "did not physically attend the mediation," [she] conferred with the attorneys by phone continuously throughout the day of the mediation and approved of the settlement strategies that [the] attorneys used."  (*Id.*)  She continued these conferences with counsel "after the mediation session as the negotiations continued."  (*Id.*)  However, Class Counsel indicates that the conversations with Plaintiff regarding the mediation brief took only 1.0 hour.  (Doc. 39 at 18.)  Also, while Plaintiff reports she conferred with Class Counsel by phone throughout the course of the mediation, making herself available by phone is significantly less burdensome than traveling to attend the mediation in person.

Nevertheless, it appears Plaintiff spent time on this action by providing assistance with discovery, reviewing documents prepared by Counsel, and making herself available during the course of mediation.  Therefore, this factor weighs in favor of an incentive payment to Plaintiffs.

### C.    Fears of workplace retaliation

Plaintiff does not contend she feared retaliation for their connections to this action, and Plaintiff is a *former* employee of Defendant such that retaliation is not possible.  Thus, this factor does not support incentive payments to Plaintiff.

///

**D.      Reasonableness of Plaintiff's request**

Considering the actions taken by Plaintiff and the time expended, an incentive award is appropriate.  In determining the amount to be awarded, the Court may consider the time expended by the class representative, the fairness of the hourly rate, and how large the incentive award is compared to the average award class members expect to receive.  *See, e.g., Ontiveros v. Zamora*, 2014 WL 5035935 (E.D. Cal. Oct. 8, 2014) (evaluating the hourly rate the named plaintiff would receive to determine whether the incentive award was appropriate); *Rankin v. Am. Greetings, Inc.*, 2011 U.S. Dist. LEXIS 72250, at *5 (E.D. Cal. July 6, 2011) (noting the incentive award requested was "reasonably close to the average per class member amount to be received); *Alvarado*, 2011 WL 1883188 at *10-11 (considering the time and financial risk undertaken by the plaintiff).  Here, considering these factors, the $15,000 award that Plaintiff requests is out of proportion to the efforts made and time expended.

### 1.      Time expended

In *Alvarado*, the Court noted the class representatives "(1) travelled from Bakersfield to Sacramento for mediation sessions (2) assisted Counsel in investigating and substantiating the claims alleged in this action; (3) assisted in the preparation of the complaint in this action; (4) produced evidentiary documents to Counsel; and (5) assisted in the settlement of this litigation." *Id.*, 2011 WL 1883188 at *11.  Further, the Court noted the plaintiffs "undertook the financial risk that, in the event of a judgment in favor of Defendant in this action, they could have been personally responsible for the costs awarded in favor of the Defendant." *Id.*  In light of these facts, the Court found an award of $7,500 for each plaintiff was appropriate for the time, efforts, and risks undertaken.

Likewise, in *Bond*, the Court found incentive payments of $7,500 were appropriate for the two named plaintiffs who: "(1) provided significant assistance to Class Counsel; (2) endured lengthy interviews; (3) provided written declarations; (4) searched for and produced relevant documents; (5) and prepared and evaluated the case for mediation, which was a full day session requiring very careful consideration, evaluation and approval of the terms of the Settlement Agreement on behalf of the Class." *Bond*, 2011 WL 2648879, at *15.  Similarly, the Northern District determined class representatives failed to justify incentive awards of $10,000 although the plaintiffs reported "they were involved with the case by interacting with counsel, participating in conferences, reviewing documents,

1   and attending the day-long mediation that resulted in the settlement." *Wade v. Minatta Transport Co.*,

2   2012 U.S. Dist. LEXIS 12057, at \*3 (N.D. Cal. Feb. 1, 2012).

3          In this case, Plaintiff seeks an award that doubles the amount of the incentive awards approved

4   in *Alvarado* and *Bond*.  However, Plaintiff did not suffer the inconvenience of traveling for mediation

5   or endure lengthy interviews.  Further, although Plaintiff assisted with the production of documents and

6   reviewing evidence produced by Defendant, it does not appear that Plaintiff was involved in any

7   investigations related to her claims.  Consequently, the award of $15,000 is excessive.

8                    2.       Fairness of the hourly rate

9          Recently, this Court criticized a requested award of $20,000 where the plaintiff estimated "he

10  spent 271 hours on his duties as class representative over a period of six years," because the award

11  would have compensated the class representative "at a rate of $73.80 per hour." *Ontiveros*, 2014 WL

12  5035935 at \*5-6. The Court explained that "[i]ncentive awards should be sufficient to compensate class

13  representatives to make up for financial risk . . . for example, for time they could have spent at their

14  jobs."  *Id.* at \*6 (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  The

15  Court found an award of "$50 per hour fairly compensate[] the named plaintiff for his time and

16  incorporates an extra incentive to participate in litigation," considering that the plaintiff's hourly flat

17  rate while employed by the defendant was $15 per hour.  *Id.* at \*6; n.3.  Nevertheless, the Court

18  increased the award from $13,550 (calculated with $50 per hour for the 271 hours) to $15,000 because

19  "Mr. Ontiveros relinquished the opportunity to bring several of his own claims."  *Id.* at \*6.

20         Here, with the estimated 64 hours of tasks taken by Plaintiff, the requested award of $15,000

21  would compensate Plaintiff at a rate of nearly $235 per hour.  If the Court were to adopt the $50 per

22  hour rate recently approved in *Ontiveros*, Plaintiff's incentive award would be reduced to $3,200.

23                    3.       Comparison of the award to those of the Class Members

24         *In Rankin*, the Court approved an incentive award of $5,000, where the "[p]laintiff retained

25  counsel, assisted in the litigation, and was an active participant in the full-day mediation."  *Id.*, 2011

26  U.S. Dist. LEXIS 72250, at \*5.  The Court found the amount reasonable, in part because "the sum is

27  reasonably close to the average per class member amount to be received."  *Id.*  In contrast, here Plaintiff

28  seeks an award of $15,000, which is more than 10 times the average award for Class Members will

31

receive.  (*See* Doc. 43 at 10; Behring Decl. ¶ 15) (estimating the average award is $1,397, "and the highest settlement share to be paid is approximately $2,305").

  **E.**  **Amount to be awarded**

   In light of the efforts expended by Plaintiff, the average award expected to be received by the class members, the Court finds $7,500 is an appropriate incentive award.  With an hourly rate of $50 per hour, Plaintiff would be entitled to an award of $3,200, but an increase of the award is appropriate to reflect the fact that Plaintiff released more claims as part of the settlement than the Class Members. *See Ontiveros*, 2014 WL 5035935 at *5-6.  Thus, Plaintiff's request for an incentive payment is **GRANTED** in the modified amount of $7,500.

<u>**CONCLUSION AND ORDER**</u>

   Based upon the foregoing, **IT IS HEREBY ORDERED**:

  1.  Plaintiff's motion for final approval of the Settlement Agreement is **GRANTED**;

  2.  Plaintiffs' request for certification of the Settlement Class is **GRANTED** and defined as follows:

> All current and former employees who were employed by W.W. Grainger, Inc. in California at any time from May 31, 2009 through the Preliminary Approval Date who have not settled all of the claims asserted herein.

  3.  Plaintiff's request for a class representative incentive payment is **GRANTED** in the amount of $7,500;

  4.  Class Counsel's motion for attorneys' fees is **GRANTED** in the amount of $550,000, which is 20% of the gross settlement amount;

  5.  Class Counsel's request for costs in the amount of $10,000 is **GRANTED**;

  6.  The request for fees for the Settlement Administrator Simpluris in the amount of $22,000 is **GRANTED**; and

  7.  The California Labor Code Private Attorney General Act payment to the State of California in the amount of $7,500 is **APPROVED**;

  8.  The action be dismissed with prejudice, with each side to bear its own costs and attorneys' fees except as otherwise provided by the Settlement and ordered by the Court; and

1         9.     The Court retain jurisdiction to consider any further applications arising out of or in

2    connection win the Settlement.

3

4    IT IS SO ORDERED.

5        Dated:   **December 29, 2014**            **/s/ Jennifer L. Thurston**

6                                            UNITED STATES MAGISTRATE JUDGE